IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

VINCENT TRACY TAITE,
     Petitioner,

vs.                          Case No.:  3:12cv127/MCR/EMT

MICHAEL D. CREWS,
     Respondent.
_____/

## ORDER, REPORT AND RECOMMENDATION

     This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).[1]  Respondent filed an answer and relevant portions of the state court record (doc. 53).  Petitioner filed a reply (doc. 58).

     The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.     BACKGROUND AND PROCEDURAL HISTORY

     The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 53).[2]  Petitioner was charged in the Circuit Court in and for Escambia County,

_____

[1] Petitioner verified that he wishes to withdraw his amended petition (doc. 19) and proceed on his original petition (*see* doc. 69).

[2] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 53).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

Florida, Case No. 2007-CF-6338, with one count of vehicular homicide (Count 1), one count of leaving the scene of a crash involving death (Count 2), and one count of violation of an injunction for protection against domestic violence (Count 3) (Ex. A at 1).  Petitioner entered a written plea agreement, pursuant to which the parties agreed the State would not pursue a second degree murder charge on Count 1, and Petitioner would plead nolo contendere as charged, with no agreement as to his sentence and with knowledge that the State was seeking habitual felony offender (HFO) sentencing on Count 1, which would increase the statutory maximum for Count 1 from fifteen (15) to thirty (30) years (*id.* at 11–15).  At a hearing held March 4, 2009, the court accepted the plea (Ex. B at 97–105).  On April 15, 2009, the court adjudicated Petitioner guilty of the charges, and sentenced him as an HFO to thirty (30) years in prison on Count 1, a concurrent term of thirty (30) years in prison on Count 2, with pre-sentence jail credit of 484 days on both counts, and time served on Count 3 (Ex. A at 44–52, Ex. B at 106–63).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D09-2857 (Ex. A at 56).  Petitioner's counsel filed a brief, pursuant to Anders v. California, 386 U.S. 738 (1967), asserting that the appeal was "wholly frivolous" (Ex. C).  Petitioner did not file a pro se initial brief.  The First DCA affirmed the judgment per curiam without written opinion on March 22, 2010, with the mandate issuing April 19, 2010 (Exs. E, F).  Taite v. State, 31 So. 3d 786 (Fla. 1st DCA 2010) (Table).  Petitioner did not seek further review.

On September 16, 2010, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. G at 1–84).  The state circuit court summarily denied the motion in an ordered rendered January 24, 2011 (*id.* at 97–109).  Petitioner appealed the decision to the First DCA, Case No. 1D11-1169 (Exs. H, I).  The First DCA affirmed the judgment per curiam without written opinion on September 8, 2011, with the mandate issuing November 30, 2011 (Exs. K, N).  Taite v. State, 75 So. 3d 274 (Fla. 1st DCA 2011) (Table).

Petitioner filed the instant federal habeas action on March 18, 2012 (doc. 1).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas

review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.  In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed

---

[3] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim. Moreover, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See* Henderson v. Campbell, 353 F.3d 880, 890 n. 15 (11th Cir. 2003).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining

to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87, 178 L. Ed. 2d 624 (2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. See Gill, *supra* at 1291 (citing Harrington, 131 S. Ct. at 786).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  See Harrington, 131 S. Ct. at 786; *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## III.   EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[4] thereby giving the

---

[4] Section 2254 provides, in pertinent part:

> (b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
> (A)  the applicant has exhausted the remedies available in the courts of the State; or
> (B) (i)  there is an absence of available State corrective process; or
>     (ii)  circumstances exist that render such process ineffective to protect the rights of the

State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.

applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

*Id.*, 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in <u>Duncan v. Henry</u>, 513 U.S. 364.  The <u>Duncan</u> Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[5]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  <u>Duncan</u>, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  <u>Baldwin v. Reese</u>, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  In <u>Baldwin</u>, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  *Id.*, 541 U.S. at 32.  This language, while not part of the Court's holding, provides helpful instruction.  With regard to this language, the Eleventh Circuit explained in <u>McNair v. Campbell</u>, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"  <u>McNair</u> [<u>v. Campbell</u>], 315 F. Supp. 2d at 1184 (quoting <u>Vasquez v. Hillery</u>, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . . We therefore hold

---

[5] The petitioner in <u>Duncan</u> raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[6]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation" requirement. After Duncan, however, the Eleventh Circuit has taken a more narrow approach. For example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution. *Id.* at 1308 n.5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases. The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held

---

[6] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. *Id.*

to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine.  Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  Ford v. Georgia, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[7]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate.  *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a

---

[7] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

fundamental miscarriage of justice. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

Id. Although a habeas petitioner asserting a convincing claim of actual innocence need not prove diligence to overcome a procedural bar, timing is a factor relevant in evaluating the reliability of a petitioner's proof of innocence. See McQuiggin v. Perkins, — U.S. —, 133 S. Ct. 1924, 1935, 185 L. Ed. 2d 1019 (2013). As the Court stated in Schlup, "[a] court may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of . . . evidence [of actual innocence]." 513 U.S. at 332; see also House, 547 U.S. at 537.

Within this framework, the court will review Petitioner's claims.

IV.   PETITIONER'S CLAIMS

    A.   Ground One: "Petitioner was denied his 6th Amendment right to effective assistance of counsel during the penalty phase of this case."

Petitioner contends defense counsel provided ineffective assistance at sentencing (doc. 1 at 3–7). He asserts four sub-claims, alleging counsel was ineffective for (1) allowing Petitioner's letter to the sentencing judge into the record without advising Petitioner of the prejudicial consequences of the communication, (2) failing to object to Ms. Demeritt's testifying at sentencing, (3) failing to impeach Joe Thomas' testimony at sentencing with his prior inconsistent statements, and (4) failing to object to the sentencing court's consideration of a letter from the victim's son (id.). Petitioner asserts he raised these sub-claims in claims 5 and 9 of his Rule 3.850 motion (id. at 3, 7).

Respondent argues sub-claims 1 and 4 of Ground One were not presented to the state courts and are therefore unexhausted and procedurally defaulted (doc. 53 at 6–10). Respondent contends any attempt to return to state court would be futile; therefore, the claims are procedurally barred from federal review (*id.* at 10–11). With regard to sub-claims 2 and 3, Respondent contends Petitioner failed to demonstrate that the state courts' adjudication of the claims was contrary to or an unreasonable application of clearly established federal law (*id.* at 11–18).

With regard to the exhaustion issue, Petitioner concedes that his federal claim "expanded in substance" from what he presented in his Rule 3.850 motion (doc. 1 at 7; doc. 58 at 1–5). He contends it is nonetheless a claim that he received ineffective assistance of counsel ("IAC") at sentencing, which is the claim he presented to the state courts, albeit in a less detailed manner (*id.*).

1.   Sub-claims 1 and 4 of Ground One

The state court record demonstrates that Petitioner's Rule 3.850 motion presented the following ten IAC claims:

1)  Length of time trial counsel, Elton Kellam, had the case before advising the defendant Vincent Taite, to plead guilty and receive a 30 year F.D.O.C. sentence as an H.F.O. (Habitual Felony Offender);

2)  Counsel should have moved to bifurcate the charge of contempt of court/violation of injunction from the other charges involved in this case;

3)  Evidence from the State showed that the defendant's version of events that he could not see the victim prior to the accident could not be refuted;

4)  Evidence from the State showed that the defendant's version of events that the victim voluntarily violated the injunction she obtained against the defendant when she went looking for the defendant that night and convinced him to leave with her in her S.U.V.;

5)  The State's only witness to the accident [Joe Thomas] was not adequately impeached or subjected to the mandated level of the adversarial process by examining his previous conflicting reports and testimony of his recollection of the events the night of the accident;

6)  The State's evidence supports the fact that the crime of leaving the scene of an accident involving an injury or death, the State could not prove beyond a reasonable doubt nor refute the defendant's theory of innocence that he could not see the victim, that he knew he was involved in an accident that involved an injury or death, which the State must prove as an essential element of the crime;

7)    The State's evidence supports the fact that the crime of vehicular homicide/negligent homicide, [ ] could not have been proved beyond a reasonable doubt nor refute the defendant's steadfast assertion that he could not see the victim prior to the accident, nor refute his theory of innocence that he knew that driving the S.U.V. in an unsafe manner endangered any other person's safety, other than himself, which the State must prove as an essential element;

8) The State could not convict the defendant of two crimes where death is an essential element when only one death occurred;

9) Counsel erred by allowing the victim of a previous criminal case of the defendant [Ms. Demeritt] to testify at sentencing as the family representative even though she was not related to the victim's family and in fact was a previous girlfriend of defendant;

10) Lastly, the defendant argues that the State may have violated the technical rules and requirements to seek the Habitual Felony Offender sentences.

(Ex. G at 25–27).

As previously discussed, Petitioner asserts that the four sub-claims asserted in Ground One of his federal petition were fairly presented to the state courts in claims 5 and 9 of his Rule 3.850 motion (*see* doc. 1 at 3, 7).  The Supreme Court has instructed that if "the substance of a federal habeas corpus claim [was] first . . . presented to the state courts," then the claim is exhausted, "despite variations in the . . . factual allegations urged in its support."  <u>Picard</u>, 404 U.S. at 277–78; *see also* <u>Henry v. Dep't of Corr.</u>, 197 F.3d 1361, 1367 (11th Cir. 1999) ("The exact presentation of the claims in the state and federal courts may vary some.").  For a claim to be exhausted, there must be "enough for the reasonable reader to understand each claim's particular legal basis and specific factual foundation."  <u>Pope v. Sec'y for Dep't of Corr.</u>, 680 F.3d 1271, 1296 (11th Cir. 2012) (internal quotation marks and citation omitted).  If a petitioner makes very similar allegations before the state and federal courts, and any discrepancies are insignificant, a claim is exhausted, even though not every piece of factual support alleged in federal court was alleged in state court.  *See id.* at 1295–96. In the context of ineffective assistance of counsel, the Eleventh Circuit has stated:

[A] general allegation of ineffective assistance or a specific allegation of ineffective assistance [made in state court] wholly unrelated to the ground on which the claim ultimately depends [in federal court] will [not] immunize a petitioner from a finding of procedural default.

<u>Ogle v. Johnson</u>, 488 F.3d 1364, 1369 (11th Cir. 2007).

In Pope, the Eleventh Circuit applied Ogle in concluding that the federal petitioner exhausted a failure-to-mitigate-at-sentencing claim:

> Here, the failure-to-mitigate-at-sentencing claim as pled in Pope's federal habeas petition raised the exact same legal issue that was presented to the state court—that but for the complete absence of any investigation and presentation of mitigation evidence, there is a reasonable probability that the result of Pope's sentencing proceeding would have been different.  Specifically, Pope argued on December 30, 1986 in his Rule 3.850 motion for post-conviction relief that trial counsel "failed to present any evidence of mitigating circumstances during the penalty phase of defendant's trial other than the standard plea of mercy from the defendant's mother," and "did little or nothing to develop evidence of such mitigating factors such as defendant's psychological history, performance in the military, or his capacity for rehabilitation."  In his federal petition, Pope's allegations center around his abused and impoverished childhood, his positive personality traits, his mental health issues, and his honorable military service in a combat zone.  While his federal petition certainly expanded on the topics raised earlier in state court, we cannot ignore that they involve the same issues raised there—his psychological history, his performance in the military, and his capacity for rehabilitation— in the context of an ineffective assistance of counsel claim.  The federal question was thus "plainly defined," Kelley [v. Sec'y for Dep't of Corr.], 377 F.3d [1317,] 1345 [11th Cir. 2004], so that the state courts and the State were made fully aware of Pope's ineffectiveness claim, "despite variations in the . . . factual allegations urged in its support."  Picard, 404 U.S. at 277, 92 S. Ct. 509.  We, therefore, conclude that the district court did not err in thrice rejecting the State's argument that Pope's failure-to-mitigate claim was unexhausted.

Pope, 680 F.3d at 1287 (footnote omitted).

In the instant case, contrary to Petitioner's argument that sub-claims 1 and 4 of Ground One of his federal petition merely expanded on the issues raised in claims 5 and 9 of his Rule 3.850 motion, sub-claims 1 and 4 raised different issues than those raised in state court.  A reasonable reader would not have understood from claims 5 and 9 of Petitioner's Rule 3.850 motion that Petitioner was presenting an IAC claim based upon counsel's allowing Petitioner's letter to the sentencing judge into the record without advising Petitioner of the prejudicial consequences of the communication (see Ex. G at 26–27, 54–58).  Nor would a reasonable reader have understood from those claims that Petitioner was presenting an IAC claim based upon counsel's failure to object to the sentencing court's consideration of a letter from the victim's son (see id.).  Even though claims 5 and 9 of the Rule 3.850 motion concerned counsel's performance at sentencing, Petitioner did not allege any deficiency on defense counsel's part with regard to the sentencing court's consideration of Petitioner's letter or the victim's son's letter, nor did Petitioner provide any factual foundation for an

IAC claim related to the sentencing court's consideration of this evidence. Therefore, Petitioner failed to exhaust the specific IAC claims asserted in sub-claims 1 and 4 of Ground One of his federal petition. *See, e.g.*, Bailey, 172 F.3d at 1303 & n.6 (petitioner's federal claims of ineffective assistance of counsel for failure to raise a chain-of-custody (of cocaine evidence) issue on direct appeal and ineffective assistance of counsel for failure to allow petitioner to testify regarding chain-of-custody of cocaine evidence issue, were not fairly presented to the state courts; those particular issues were never presented to the state courts even though they were related to a claim of ineffective assistance of counsel for failure to investigate the chain-of-custody of cocaine evidence, which was raised in state court).

Further, a Rule 3.850 motion was the procedurally proper vehicle for raising IAC claims, and any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine because an attempt to raise the sub-claims in another Rule 3.850 motion would be subject to dismissal as successive. *See* Fla. R. Crim. P. 3.850(f). Therefore, sub-claims 1 and 4 of Ground One are procedurally defaulted. Petitioner has not demonstrated he is entitled to federal review of sub-claims 1 and 4 through any recognized exception to the procedural bar. Accordingly, he is not entitled to federal habeas review of those sub-claims.

        2.     <u>Sub-claims 2 and 3</u>

Petitioner fairly presented sub-claims 2 and 3 of Ground One to the state courts in claims 5 and 9 of his Rule 3.850 motion (Ex. G at 26–27, 54–58). Therefore, the court will analyze whether the state courts' adjudication of those sub-claims is entitled to deference under the AEDPA.

        a.     Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). To obtain relief under <u>Strickland</u>, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." <u>Jones v. Campbell</u>, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms."

Strickland, 466 U.S. at 688–89.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Id. at 689.  If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15).  Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence."  Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317).  Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" Id. (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high.  See Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).  "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Strickland, 466 U.S. at 693.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Id. at 694.  However, a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome.  Strickland, 466 U.S. at 693–94.  Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. Williams v. Taylor, 529 U.S. at 405–06.  Additionally, the prejudice assessment does "not depend

on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law.  Strickland, 466 U.S. at 694–95.

"Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010).  "Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult."  Richter, 131 S. Ct. at 788. As the Richter Court explained:

The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so.  The Strickland standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard. *Id.* (citations omitted).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).

b.   Federal Review of State Court Decision

In the state circuit court's written decision denying Petitioner's Rule 3.850 motion, the court correctly stated the deficient performance and prejudice prongs of the Strickland standard as the applicable legal standard (Ex. G at 100–01).  The court adjudicated sub-claims 2 and 3 (identified as claims 5 and 9 in Petitioner's Rule 3.850 motion) as follows:

Ground Five

The Defendant claims that his counsel was ineffective for failing to adequately impeach Joe Thomas, the eyewitness who testified at sentencing. However, by the time Mr. Thomas testified, the Defendant had already pled *nolo contendere* and his guilt, for purposes of the instant prosecution, was established. Furthermore, Mr. Thomas' testimony is not truly contradictory with the Defendant's own sworn allegations as to what occurred.  Attachment 5, at 9–14.  The Defendant is not entitled to relief on this claim.
. . . .

Ground Nine

> The Defendant claims that his counsel was ineffective for not objecting to a former girlfriend of his making a statement at sentencing as a "representative" of the victim's family.  This witness testified that she had "developed a relationship as friends" with the victim "through Mr. Taite, which is irrelevant to this case." Attachment 5, at 18.  This witness was called by the State.  Id.  The Defendant's counsel could not have "prevented" the State from calling this witness.  The mere fact that this witness is alleged to have previously dated the Defendant, or was a victim in the Defendant's prior criminal case, would not form a legitimate basis for objecting to her testimony.  Id. at 18–21.  Thus, this claim is legally insufficient and cannot be cured by good faith amendment.

(Ex. G at 107, 108).  Petitioner appealed the circuit court's decision to the First DCA, and the appellate court affirmed without written opinion (Ex. K).

The state court's adjudication of Petitioner's IAC claim regarding Joe Thomas' testimony was not unreasonable.  The transcript of the sentencing hearing demonstrates that Joe Thomas testified that he was driving on Massachusetts Avenue on October 2, 2007, the day of the vehicular homicide that killed Petitioner's wife (Ex. B at 115–19).  He testified he was traveling east, and he noticed an SUV pulled up against a fence just ahead of him (id.).  He testified that as he slowed his vehicle, he saw the passenger side door of the SUV open, and a female exit the SUV (id.).  He testified the female started to run when she exited the vehicle (id.).  Mr. Thomas testified he saw another figure in the SUV (id.).  He testified he watched the female in his rear view mirror after he had just passed a car, and he saw her run in the middle of the street and then begin to run toward the side of the street (id.).  Mr. Thomas testified that by that time, the SUV pulled off from the fence area, turned around quickly, and started toward the female at a high rate of speed (id.).  He testified he did not see the SUV hit the female, but he observed the SUV smash into a pole (id.).  Mr. Thomas testified he turned around and went to the crash site (id.).  He testified he glanced down at the female and "knew she was gone" (id.). He testified he went to the SUV to see if the driver needed help, but the door was open with no one in the vehicle (id.).

As the state court found, Mr. Thomas' testimony did not contradict the version of the facts to which Petitioner agreed when he signed the written plea agreement (Ex. A at 5–6, 11–15).  The facts to which Petitioner agreed (as set forth in the probable cause affidavit) were the following, in relevant part:

> [T] above named subject [Petitioner] was driving the 2001 Chevrolet Suburban Suv, . . . . He and his wife, Estella Michelle Tubwell, . . . were inside the vehicle when

stopped at the corner of Massachusetts Ave and Franklin Ave. Estella Tubwell exited the vehicle and ran eastbound on Massachusetts Ave in the eastbound lane then crossed the westbound lane onto the north shoulder. The defendant drove the vehicle eastbound on Massachusetts Ave and crossed the westbound lane onto the north shoulder at excessive speed and ran over his wife Estella Tubwell which [sic] sustained fatal injuries. He then struck a power pole forcing the airbags to be deployed. Vincent Taite knew or should have known he was involved in a crash. He fled the scene on foot and made no attempt to assist his wife with first aid or remain at the scene as per F.S.S. 316.062. The drivers [sic] side airbag had residual blood stain on it. The blood stain was collected and analyzed by FDLE Crime Lab. They advised the DNA matched Vincent Tracy Taites [sic] DNA. The investigation revealed Vincent Tracy Taite had a current Temporary Injunction order for Domestic Violence against him from Estella Michele [sic] Tubwell that was issued on 09-24-2007.

(Ex. A at 5, 11).

Mr. Thomas' testimony at sentencing was no more damaging to Petitioner than the factual description of the offenses Petitioner admitted in the plea agreement. Therefore, Petitioner failed to show a reasonable probability that the result of the sentencing proceeding would have been different if defense counsel had impeached Mr. Thomas' testimony. Petitioner's having failed to satisfy the prejudice prong of the Strickland standard, the state court did not unreasonably apply Strickland in denying this IAC claim.

With regard to Ms. Demeritt's testimony, Petitioner alleges counsel should have objected to her testimony on the ground that Ms. Demeritt had no right to testify at sentencing under Florida Statutes § 921.143(1), (2) (doc. 1 at 5–6).[8]

---

[8] This statute provides:

(1) At the sentencing hearing, and prior to the imposition of sentence upon any defendant who has been convicted of any felony or who has pleaded guilty or nolo contendere to any crime, including a criminal violation of a provision of chapter 316, the sentencing court shall permit the victim of the crime for which the defendant is being sentenced, the victim's parent or guardian if the victim is a minor, the lawful representative of the victim or of the victim's parent or guardian if the victim is a minor, or the next of kin of the victim if the victim has died from causes related to the crime, to:

(a) Appear before the sentencing court for the purpose of making a statement under oath for the record; and

(b) Submit a written statement under oath to the office of the state attorney, which statement shall be filed with the sentencing court.

(2) The state attorney or any assistant state attorney shall advise all victims or, when appropriate, the

"[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); *see also* Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L. Ed. 2d 508 (1975) ("State courts are the ultimate expositors of state law," and federal courts must therefore abide by their rulings on matters of state law) (citations and footnote omitted); Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983).  Although an ineffective assistance of counsel claim is a federal constitutional claim, which the court considers in light of the clearly established rules of Strickland, when "the validity of the claim that [counsel] failed to assert is clearly a question of state law, . . . we must defer to the state's construction of its own law."  Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984) (in the context of alleged ineffectiveness of appellate counsel, "[o]n the one hand, the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension," but, "[o]n the other hand, the validity of the claim [counsel] failed to assert is clearly a question of state law, and we must defer to the state's construction of its own law.") (citations omitted)[9]; *see also* Callahan v. Campbell, 427 F.3d 897, 932 (11th Cir. 2005) (where the state court has answered the question of what would have happened if defense counsel had made the objection that petitioner faults him for not making under state law, and that answer is that the objection would have been overruled, defense counsel was not ineffective for failing to make that objection; to conclude otherwise would require the federal habeas court to conclude the state court misinterpreted state law) (quotation and omitted); Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1354–55 (11th Cir. 2005).

---

victim's parent, guardian, next of kin, or lawful representative that statements, whether oral or written, shall relate to the facts of the case and the extent of any harm, including social, psychological, or physical harm, financial losses, loss of earnings directly or indirectly resulting from the crime for which the defendant is being sentenced, and any matter relevant to an appropriate disposition and sentence.

Fla. Stat. § 921.143(1), (2).

[9] Alvord was superseded by statute on other grounds as noted in Hargrove v. Solomon, 227 F. App'x 806 (11th Cir. 2007) (unpublished); *see also* United States v. Battle, 264 F. Supp. 2d 1088, 1134–35 (N.D. Ga. 2003) (noting that Alvord, involving a claim of ineffectiveness for failure to raise an insanity defense, predated passage of the Insanity Defense Reform Act of 1984).

In the instant case, the state court concluded there was no valid basis for defense counsel to object to Ms. Demeritt's testimony at sentencing.  In light of this determination, Petitioner failed to show that counsel performed deficiently, or that there is a reasonable probability that the result of his sentencing would have been different if counsel had objected.  Therefore, Petitioner is not entitled to federal habeas relief on this IAC claim.

In sum, as to Ground One, Petitioner failed to demonstrate that the state court's adjudication of sub-claims 2 and 3 of Ground One was based upon an unreasonable determination of the facts, or was contrary to or an unreasonable application of Strickland.  Further, as previously discussed sub-claims 1 and 4 are procedurally barred from federal review.  Therefore, Petitioner is not entitled to federal habeas relief on Ground One.

B.      Ground Two:  "Petitioner was denied his Sixth Amendment right to effective assistance of counsel based upon counsel's affirmative misadvice."

Petitioner alleges defense counsel affirmatively misadvised him to enter a plea to vehicular homicide to avoid being tried for second degree murder, even though the evidence was insufficient to support a second degree murder conviction (doc. 1 at 8).  He alleges that but for this misadvice, he would have rejected the plea offer and insisted on going to trial (id.).  He asserts he raised this claim in claims 6 and 7 of his Rule 3.850 motion (doc. 58 at 5–6).

Respondent contends Petitioner did not fairly present this claim in claims 6 and 7 of his Rule 3.850 motion; therefore, Ground Two is unexhausted and procedurally barred (doc. 53 at 18–20).  Respondent further contends notwithstanding the exhaustion issue, the claim is without merit (id. at 20–21).

1.      Clearly Established Federal Law

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process."  Lafler v. Cooper, — U.S. —, 132 S. Ct. 1376, 1384, 182 L. Ed. 2d 398 (2012) (citing Missouri v. Frye, — U.S. —, 132 S. Ct. 1399, 1404, — L. Ed. 2d — (2012), and McMann v. Richardson, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)).  "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it."  Lafler, 132 S. Ct. at 1387.  The two-part test articulated in Strickland, 466 U.S. 668 (1984), applies to claims that counsel was ineffective during plea negotiations.  Lafler, 132 S. Ct. at 1384 (applying Strickland's two-part test to federal habeas petitioner's claim that counsel was

ineffective for advising him to reject a plea offer); <u>Frye</u>, 132 S. Ct. at 1404, 1409–10 (applying <u>Strickland</u>'s two-part test to federal habeas petitioner's claim that counsel was ineffective for failing to communicate a prosecution plea offer before it lapsed); <u>Hill v. Lockhart</u>, 474 U.S. 52, 48, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (applying <u>Strickland</u>'s two-part test to defendant's challenge to his guilty plea based on ineffective assistance of counsel).

     <u>Strickland</u>'s first prong requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'" <u>Hill</u>, 474 U.S. at 57 (quoting <u>Strickland</u>, 466 U.S. at 688). The focus of inquiry under the performance prong of the <u>Strickland</u> standard is whether counsel's assistance was "reasonable considering all the circumstances." *See* <u>Strickland</u>, 466 U.S. at 691.  The Supreme Court warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court.  Even then the truth will often be in dispute.  In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case.  Counsel must predict how the facts, as he understands them, would be viewed by a court . . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.  That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

<u>McMann</u>, 397 U.S. at 769–70.

     In a plea situation, counsel must provide advice "within the range of competence demanded of attorneys in criminal cases." <u>Hill</u>, 474 U.S. at 56–57 (quoting <u>McMann</u>, 397 U.S. at 771).  Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused. <u>Stano v. Dugger</u>, 921 F.2d 1125, 1150-51 (11th Cir. 1991).  Absent such blatant errors, however, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." <u>Yordan v. Dugger</u>, 909 F.2d 474, 477 (11th Cir. 1990).  The Eleventh Circuit has commented that "[t]he right to competent plea bargain advice is at best a privilege that confers no certain benefit," because a defendant "may make a wise decision" without assistance of counsel or a "bad one despite superior advice from his lawyer." <u>Wofford v. Wainwright</u>, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam).  "[C]ounsel owes a

lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between [entering a plea] and going to trial." *Id.* This requires counsel to "offer his informed opinion as to the best course to be followed" and impart "a general knowledge of the possible legal consequences of facing trial" to the defendant. *Id.* Therefore, a defendant's failure to "correctly assess every relevant factor entering into his decision" does not undermine a validly entered guilty plea. *Id.* at 1509.

Strickland's second prong requires a defendant to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of pleas, "[t]he . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59.

      2.    Federal Review of State Court Decision

Upon review of the state court record, the undersigned concludes Petitioner fairly presented Ground Two in claims 1, 3, 6, and 7 of his Rule 3.850 motion (Ex. G at 25–26, 31–40, 59–82). The state circuit court adjudicated those claims as follows:

<u>Relevant Factual and Procedural Background</u>

> After entering an open, or "straight up," plea of *nolo contendere*, the Defendant was convicted of (1) vehicular homicide, (2) leaving the scene of an accident involving death, and (3) contempt of court.[FN 2] <u>Attachments 1 and 2</u>. The Defendant was sentenced accordingly. <u>Attachment 1</u>.

> At the plea colloquy on March 4, 2009, the Defendant, while under oath, agreed that "based upon the evidence the State has, that they have what they need to essentially prove these charges." <u>Attachment 2</u>, at 7. The Defendant was told, and he indicated he understood, that he faced a maximum of 30 years in state prison on count 1, a maximum of 30 years in state prison on count 2 and one year in county jail on count 3. <u>Attachment 2</u>, at 6. The Defendant indicated that he was entering his plea freely and voluntarily. <u>Id.</u>, at 4. He stated that he understood that there would be no trial, he was giving up the right to put on evidence, to cross-examine evidence, to testify, to exercise his right to remain silent and giving up the right to appeal guilt or innocence. <u>Id.</u>

> The factual basis for the plea, agreed to by the Defendant, was the probable cause affidavit in the court file. <u>Attachments 3 and 4</u>. In that probable cause affidavit,

it describes how the Defendant, while driving a Chevrolet Suburban at an excessive speed, drove in the direction that his wife was running on foot.  Attachment 4.  The Defendant ran over his wife, causing fatal injuries, and then struck a power pole.  Id. The Defendant fled the scene on foot and made no attempt to assist his wife.  Id.

At sentencing, a witness named Joe Thomas testified under oath as to the incident.  Attachment 5.  Mr. Thomas testified:

> . . . I saw the vehicle door open on the passenger side and a female exited the car.  And when she exited the car she started to run.  And I did notice another figure in the car which looked like a male figure. I did not see him in the face or anything other [sic].
>
> She started to run.  She ran in the middle of the street.  And as I watched her, I had just passed a car.  I watched her in my rear view and she started to run toward the side of the street.  And by that time the car pulled off the fence area.  Turned around quickly and started towards her with a great amount of speed.

> Attachment 5, at 11–12.

After the impact, the witness proceeded to the scene of the accident to provide assistance.  Mr. Thomas described how he "sort of glanced down at the lady, the figure there."  He explained, "And I just flipped.  I knew she was gone."  Attachment 5, at 13.

The probable cause affidavit describes there being blood on the driver's side airbag that matched the Defendant's DNA.  Attachment 4.  Even in the instant motion, the Defendant does not dispute that he was in fact driving the vehicle that struck and killed his wife.  The Defendant alleges under oath that on the night his wife was killed he had been at "a drug house" on a "self induced drug binge."  The Defendant asserts that he "had been without sleep for several days which is common for hard line cocaine abusers."  Then, the Defendant alleges that his wife "got out of the truck and ran."  The Defendant states that at the time of the incident he was "not totally coherent" and "disoriented" and "not sure if he had do[z]ed off or blacked out."

The Defendant claims that "all he knows is that he saw his wife run across the road to the opposite shoulder."  Then, "after turning the SUV around," on a "dark deserted road," while "his wife is on foot," he "speeds across the road to the shoulder."  The Defendant explains that he is "unable to see his wife" and is "traveling faster trying to catch sight of her."  He then alleges that he "strikes a sign, strikes her in the head, then, immediately hits a telephone pole, snaps it in half."  The Defendant states that "the airbags blow and in a frantic moment, knows he will be arrested for the

accident—and driving on drugs.  He flees."  He alleges that "at no time did he know he struck his wife."

. . . .

The Defendant raises ten claims of post-conviction relief.  However, the Defendant's primary claim is that his counsel was ineffective for advising him to enter a plea of *nolo contendere* because the State would have been allegedly unable to prove the Defendant's guilt because (1) his wife had "voluntarily" violated the domestic violence injunction, (2) he did not see his wife at the time of the accident and the State could not prove otherwise and (3) he had not realized that he had struck and killed his wife at the time he fled the scene of the accident and the State could not prove otherwise.

<u>Ground One</u>

The Defendant claims that his counsel did not adequately prepare prior to advising the Defendant to enter a plea of *nolo contendere*.  This claim is without merit.  "Where a defendant enters a plea and swears that he is satisfied with his counsel's advice, he may not later attack counsel's effectiveness for failure to investigate or defend the charge."  <u>Clift v. State</u>, <u>supra</u>.

Of course, it cannot be determined, short of conducting a full scale trial and subsequent appeal, whether the state's proof would have been sufficient as to each element of the offense charged.  <u>Vega v. State</u>, 744 So. 2d 1022, 1023 (Fla. 4th DCA 1997).  However, considering the undisputed evidence against the Defendant, including the Defendant's own sworn allegations, the Defendant's claim that his counsel was deficient for advising the Defendant to enter his plea is refuted by the record.  <u>See</u> <u>Harris v. State</u>, 32 So. 3d 197 (Fla. 4th DCA 2010).

Initially, it is clear that by entering a plea of *nolo contendere* to the charged crimes, the Defendant avoided being charged with second degree murder.[FN 3] <u>Attachment 2</u>; <u>Runyon v. State</u>, 460 So. 2d 494 (Fla. 1st DCA 1984) (explaining that "in light of the charge that was not filed against the appellant in exchange for appellant's plea, we do not find the decision to plead guilty in this case to be unreasonable.").

> [FN 3:  The Defendant argues that the possibility of being charged with second degree murder was an "intimidation tactic."  The Defendant is adamant that he did not see his wife when he caused her death.  However, considering that it is undisputed that the Defendant purposely turned the vehicle around, drove at a high rate of speed towards his wife's location, where she had fled on foot, and struck her with the SUV causing her death, a charge of second degree murder does not appear objectively unreasonable.]

More importantly, the Defendant's counsel's advice to enter a plea of *nolo contendere* was not based on an unreasonable assessment of the case.

. . . .

<u>Ground Three</u>

The Defendant claims that his counsel was ineffective for not reviewing evidence  from the medical examiner which allegedly supports the Defendant's contention that the victim was laying [sic] prostrate at the time of impact.  The Defendant asserts that this evidence is consistent with his claim that he could not see his wife.

The Defendant's assertion that the injuries sustained by the victim support a conclusion that the victim was prostrate due to breaking her leg prior to the impact of the SUV appears to be based on nothing but speculation.  At most, it would appear the medical examiner's report is consistent with the possibility that the victim was laying [sic] prostrate at the time of the impact.

However, as outlined by the Court in addressing "ground one," the Defendant's counsel was not ineffective for advising the Defendant to enter his plea of *nolo contendere*.  Even if the Defendant did not see the victim prior to impact as he repeatedly indicates, the Defendant's own allegations demonstrate that he drove recklessly and it was reasonably foreseeable under those conditions that death or great bodily harm could occur.

. . . .

<u>Ground Six</u>

The Defendant asserts that his counsel was ineffective for advising him to plea to leaving the scene of an accident involving death.  The Court has addressed this claim by denying "Ground One."  Counsel was not ineffective for advising the Defendant to plead *nolo contendere*.

<u>Ground Seven</u>

The Defendant asserts that his counsel was ineffective for advising him to plea to vehicular homicide.  The Court has addressed this claim by denying "Ground One." Counsel was not ineffective for advising the Defendant to plead *nolo contendere*.

(Ex. G at 97–102, 106–07) (footnote 2 omitted).  Petitioner appealed the decision to the First DCA,

and the appellate court affirmed the lower court's decision without written opinion (Ex. K).

Deferring to the state court's determination that the facts admitted by Petitioner reasonably

supported a charge of second degree murder under Florida law, Petitioner failed to show that

counsel's advice to enter a plea to vehicular homicide to avoid being tried for second degree murder

was incompetent.[10]   The state court's application of <u>Strickland</u> was not unreasonable.   Therefore,
Petitioner is not entitled to federal habeas relief on Ground Two.

## V.     CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court
must issue or deny a certificate of appealability when it enters a final order adverse to the applicant,"
and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing
required by 28 U.S.C. § 2253(c)(2)."   A timely notice of appeal must still be filed, even if the court
issues a certificate of appealability.   Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.   28 U.S.C.
§ 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542

---

[10] Even if this court was not required to defer to the state court's determination that the evidence reasonably
supported a second degree murder charge, the undersigned would reach the same conclusion.   The elements of
second-degree murder are:

   1. (Victim) is dead.

   2. The death was caused by the criminal act of (defendant).

   3. There was an unlawful killing of (victim) by an act imminently dangerous to another and
   demonstrating a depraved mind without regard for human life.

Fla. Standard Jury Instruction in Criminal Cases, Part Two:   Instructions on Crimes, Chp. 7.4.   The Instructions define
the term "imminently dangerous to another and evincing a depraved mind regardless of human life" as an act or series
of acts that:

      1. a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury
      to another, and

      2. is done from ill will, hatred, spite or an evil intent, and

      3. is of such a nature that the act itself indicates an indifference to human life.

*Id.*   In this case, the following evidence supports defense counsel's reasonable advice to plead no contest to vehicular
homicide to avoid a second degree murder charge:   (1) at the time of the killing, the victim (Petitioner's wife) had an
active injunction against Petitioner to protect her from domestic violence, (2) while Petitioner and his wife were in
the vehicle, an argument erupted between them (*see* Ex. G at 28), (3) Petitioner's wife exited the vehicle and ran across
the road to the opposite side of the road (*id.* at 28–29), (4) Petitioner turned the vehicle around and sped across the
road to the shoulder (*id.* at 29), (5) Petitioner traveled forward on the shoulder looking for his wife (and thus in the
direction he believed her to be) and, while traveling at a high rate of speed, struck a sign, struck his wife, and hit a
telephone pole (*id.*), and (6) Petitioner immediately fled the scene (*id.* at 29–30).

(2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

Petitioner's amended habeas petition (doc. 19) is deemed **WITHDRAWN**, and the clerk of court shall so indicate on the docket.

And it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 6th day of May 2014.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**<u>NOTICE TO THE PARTIES</u>**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**